Good morning, Your Honors. Matt Larson with the Federal Defender's Office for Mr. Knight. Abstention is the extraordinary and narrow exception to the rule that a federal court must exercise its jurisdiction. Younger abstention is precluded where there is no ongoing state court proceeding and there is no such proceeding in this case. Counsel, help me a little with what's troubling me on this case. The delay seems utterly outrageous. I've never seen anything like it in an American case, frankly. However, it looks like this fellow Knight is largely responsible for it or asks for it. He keeps himself asking for postponements. Now, there's some silly stuff in the record, like Mr. Knight would not agree to a trial at this time, that sort of thing, as though it's up to a defendant in a civil or criminal case to decide whether to be tried. That was silly. And I just can't imagine even if the prosecutor – even if both sides were begging for it, that a judge would give continuances in his discretion for this long. Nevertheless, Knight has been, it seems, entirely complicit in the delay. Is there any reason to doubt that? There is, Your Honor. For the first four years of his detention without trial, 4 to 5, and the dozens of continuances that happened that time, there is no dispute that Mr. Knight was neither present for nor consented to any of those continuances. Now, he says in his habeas petition, as he said in his habeas petition in the State Court, which was filed back in 2009, that he was present. But his lawyer consented for him and was present, wasn't he? Indeed, Your Honor. And he was represented by counsel. The normal rule is that counsel's representations are imputed to the client. However, in McNeely, this Court held that to the extent Petitioner's counsel waived time, this would not necessarily be attributable to McNeely due to his repeated disagreements with counsel and assertions of his rights. And that's what we have in this case. Mr. Knight – He readily writes to the court. Did he ever write a letter during that first four or five years saying, no, I don't want a delay, I want it to go to trial now? In June of 2008, Mr. Knight filed his pro se Marsden motion. And he listed eight points, the majority of which went to the fact that nothing was happening in his case. His lawyer was doing nothing. The lawyer refused to investigate. My lawyer was doing nothing is different from my cases being delayed. Which did he say? I thought he – I thought he focused on his lawyer doing nothing. Indeed. But in this pro se pleading, the thrust of his complaints was that nothing was happening. He says in his habeas petition here, and he said in his habeas petition in the State court, he asked his lawyer since 2004, when am I going to trial? And he got excuse after excuse after excuse after excuse. Finally – When? What year was this? I'm sorry? What year are we talking about? It began in 2004 when he was committed on the commitment petition. What I'm saying is 45 days ago, not 2008, not 2004, 45 days ago, he's back in court in Los Angeles, and the judge said, I'll give you a trial, and he and his lawyer say no. You're talking about the latest continuance, Your Honor. Right. Which happened nine years after his – I know, but now you say it's not ongoing. The judge says, I'll give you a trial, and he says no. My position is at this point, he doesn't have to consent to a trial because he's already been locked up for nine years. Well, then he can't really complain about not having one. I mean – I'm sorry? Then how can he complain about not having one? His complaint has been – is that for the last nine years, he hasn't been tried. Now, the State has come along and said, oh, we'll try you now, Mr. Knight. Consent. Why should he – Did he ever either pro se or with the help of counsel file a motion to have the district attorney show cause why he didn't – why the case shouldn't be dismissed for lack of a speedy trial? He filed that application in the superior court in a State habeas petition that he filed pro se, saying I've been held at this point now for five years without trial. That's a complaint. He's complaining about being held. Did he ever file a demand for an action, an official motion to show cause? Specifically a motion to dismiss? No, Your Honor. But the cases in California which have addressed this issue hold that especially a pro se litigant doesn't have to make that specific showing if the thrust of his complaint is that he's not being tried, that he's being held for years without a trial. And in those California cases – Why shouldn't this be viewed like a guy who says, I request a continuance. And the judge says, okay, granted. And then he files a habeas petition, denial of due process, because the case was continued. Because in this case the continuances, at least for the first five years, were not made by Mr. Knight. And, in fact, he objected to them to counsel. It was counsel who sent it to them without Mr. Knight's presence or consent. Now, again, the waiver of the right to a speedy trial has to be expressed and made by the client. Here we have none of that, because it's undisputed that for the first five years Mr. Knight never consented to the continuances. And he avers that, in fact, he opposed all of them. And he's asking his lawyers over and over again, when am I going to trial? When are you going to trial? Let me ask you about another aspect of it. Suppose we accept your whole argument. Let's talk for a moment about remedies. I know that the remedy sought is that the case is dismissed. Frankly, I don't understand why that should be so. It seems like the more logical remedy for whatever wrong has been done tonight would be to grant the writ and say the case against Knight shall be dismissed unless he is brought to trial within six months or something like that. Your Honor, I haven't found any authority for that relief. The case is uniformly held. Well, we do that all the time, actually, in the numerous Ninth Circuit cases where we deny habeas on the merits in a death penalty case, but we grant the writ on the death penalty. And sometimes when we grant the writ altogether, we say this person shall be released unless he's retried or unless the penalty phase is retried within six months. In this case where the allegation is a violation of his right to trial within a meaningful time, the cases are uniform that the relief for that violation is dismissal of the commitment petition. There's no authority saying that after the clock has run out to try this person within a reasonable time, the State gets a second bite at the apple to do it. What's the best authority for this? Litman is the leading case, and that comes from the California Court of Appeal, and there are cases following that. Do you have a Federal case? It's a State case, Your Honor. No, I know that. Do you have a Federal case? Because there's Federalism issued when we tell the State court what to do, and that's why I'm asking for a Federal case. Indeed. I haven't found a State – a Federal case addressing the issue of an SVP commitment petition in California State court. But the California State courts, which have addressed this exact issue, have all applied Federal law to find that delays, which have been much shorter than the delay here, warranted relief. You're talking about the merits of his case, of his underlying petition. It seems to me the only thing before us is whether the district courts should abstain. Would that be – is that correct? Oh, Your Honor. Because the district court would then decide on the merits whether you're entitled to relief or not entitled to relief. The only thing is whether he can, you know, pledge. You may certainly address the uncertified question if you wish. You're not required to, but you may. The certified question is the younger question, right? And if Your Honors have questions about younger, I can certainly speak about that. If you would prefer that I keep talking about the merits, whatever you'd like. I mean, just to be precise about it, that's the decision the district court made. It didn't rule on the merits of the petition one way or the other. That's correct. So if we were to reverse, for example, and say, Mr. Larson's right. These proceedings aren't really ongoing in the sense we're using it. Go now and adjudicate the petition. Maybe you'll win, maybe you'll lose, but I mean, that's really – Our position is that you certainly have that option of remanding. Our position, of course, is that you shouldn't remand because this case is so outrageous. It's been nine years. The State has all but conceded that the delay is unreasonable. The State hasn't come back with any defenses as to why this delay makes sense or is not a violation of Mr. Knight's right to due process. It said, well, you know, there were two probable cause hearings. Well, actually, there was one probable cause hearing because Mr. Knight waived the first one in 2004. And then seven years later, there was a probable cause hearing, and the judge said there's probable cause to detain you. You know, that's like saying you can hold someone for nine years without a trial as long as you indict them twice. Now, that's not the law, and that's not due process. It's our position that there's enough in the record here for this Court to rule on the merits and to say that this delay does violate Mr. Knight's right to due process, and he's entitled to the writ. Kennedy, I just wonder if he has exhausted his State remedy. He has, Judge. He's put this due process claim before the California Superior Court, the California Court of Appeal, and the Supreme Court of California, and has not gotten relief from any of them. This claim on due process is fully exhausted. I know the State talks about an unexhausted claim regarding the First Amendment. That's not at issue here. We're not raising it. Our claim is that there's been a due process violation by holding this man for nine years without a trial. When is the last time he asked the State court to release him? The last time he asked the State court, it would have been the application to the Supreme Court of California. What year was that? That was in October of 2009, and the petition was denied in November of 2009. And then he thereafter, in fact, the very next month, in December of 2009, he served the instant petition, which was then filed on the docket early December. I'm sorry, early January. Have you ever had a hearing in which he was found not fit for to stand trial? No. A lot of these letters I get from Atascadero are from people who have had those hearings and have been found unfit to stand trial. You're right, Judge. I have seen in the cases that sometimes the delay is due to the fact that the person is not competent to stand trial, and so he'll be sent away and then he'll be brought back. That's not what happened. He's never had a hearing like that. No. And that's not been overriden. And what's his indictment for? You mean the commitment petition or the? Yeah. Well, does he have a criminal charge pending? No. No criminal charges. He serves his time. All it is is this civil commitment that just keeps being delayed. For nine years, yes. And are the doctors coming in and saying we're not ready or anything like that? No, the doctors, I mean, the way that the petition is filed in the first place is that two doctors evaluate him, and they say, oh, well, we think he fits the bill of being an SVP. So that's the initial probable cause finding that the judge has to make. So what he's got now is he's done his time. He's facing civil commitment, which could last the rest of his life. He would prefer not to be civilly committed for the rest of his life. However, right now the evidence looks bad. The doctors say he should be. Why wouldn't it be a reasonable interpretation of that that he's playing with stalls and bouncing between courts so that he has at least some chance of defeating the civil commitment petition? I think it's critically important to point out that Mr. Knight asserted his right to release based on a due process violation before a trial date was ever set in his case. There was one trial date that was set, right? But Mr. Knight had on two occasions before that said I've been in custody for five years without a trial. You violated my right to due process. Twice he made those allegations. And then only after that did the judge set a trial date, which the judge subsequently vacated because he granted Mr. Knight's motion for a new counsel based on his previous counsel doing nothing to defend him. Well, that could be part of the game. Your Honor? You can stall a case as long as the courts will fall for it. You can stall a case for a long time by bouncing your lawyers. I think certainly that's a suspicion, but there's no evidence in this record to support that. There kind of is. Well, all right. We disagree about that. I mean, when I used to do criminal defense, if they'd gone through two or three lawyers before me, I wouldn't take them. I read the record this way. He's committed. Five years go by. He assents to none of the continuances. And then finally, after those five years go by. You say he assents to none of the continuances. He's not even produced any more. What you mean by that is his lawyer consents to the continuances, but he was not personally present in court and addressed separately. Is that correct? Yes, Judge. Okay. So he did consent to the continuances through counsel. No, Judge. When a lawyer represents a person, the lawyer says what he has to say. Normally, yes, but in this case we have evidence to the contrary. We have evidence in his habeas petitions in State court and in this Court that he never assented, that since 2004. It doesn't matter, though, as long as he's represented. I mean, there are all kinds of things. McNeely is to the contrary. I remember clients pulling up my suit jacket and saying, ask him if the sweater was green or some utterly ridiculous question. And I didn't do it because the lawyer was in control of most of the aspects of how the case is handled. Your Honor, this is not about the color of one's sweater. This is about being jailed for nine years without a trial. In the McNeely case. No, it's about whether that part that you were talking about is not. It's about whether the lawyer or the represented client is entitled to tell the court what the position of the client is. Right. And in this case, we have evidence, as there was in McNeely, that the defendant was not in compliance with these continuances granted by counsel. Again, you refer to the McNeely case in footnote 8, which says where there is this conflict, where the individual is not agreeing to what the counsel does, you cannot impute what counsel does to the defendant. And here, in fact, there's evidence to support Mr. Knight's position because the commitment court found that his Marsden motion was meritorious. It said, yes, I'm granting it. I'm giving you a new lawyer. And why was he asking for a new lawyer? Because his first one was doing nothing on his behalf, was not bringing him to trial. So I think the record here shows for the first five years, nothing happens. He files a demand for a new lawyer. He files a petition in State court alleging a due process violation. Only then, Your Honors, does the court set an initial trial date, which it later vacates. I know the State's position is that, you know, Mr. Knight is playing games here. I would submit the opposite is true. California has seen fit to park this man in a mental hospital for nine years without bringing him to trial. Now, the cases uniformly hold it's the obligation of the government to bring someone to trial. Here, Mr. Knight has been complaining about not being brought to trial and has suffered the extreme prejudice of incarceration without a trial for nearly a decade. Under these circumstances, Your Honors, I think that you can rule for us on the merits. If not for the merits. Where is he now? He's in the mental hospital. Which one? Poalinga. That's over by Fresno, isn't it? I'm not precisely. It's a ways away. I'm not precisely sure. Did he file in the district court in the eastern district? I'm not aware of a filing in that district, Your Honor. I'm not sure McNeely is as helpful to you as you suggest, because it was a criminal case. It was pretrial detention in a felony case. True. And the Sixth Amendment applies to criminal cases. It doesn't apply to civil cases. This is a civil commitment. All of the California decisions that have addressed this issue have applied both the civil analysis under Matthews and the criminal analysis under Barker, because they analogize because this is very similar to a criminal case. Someone's been detained, pending trial. The trial that he would stand to face in the Fifth Amendment court. That is the only reason that people get to, even after they've done their time in a sex case in California, don't get released and instead just stay incarcerated the rest of their lives is a civil commitment, as though they were schizophrenic and a danger to themselves or others. And that's the only reason it's constitutional, is that it's a civil commitment for being mentally ill. Right. It's classified civil, but it looks for all intents and purposes like a criminal trial. You have the right to counsel. You have the right to have a jury. The jury has to be unanimous. The proof has to be beyond abusible doubt. You have the right to call witnesses. It's essentially a criminal trial. And that's why the California courts have analyzed it under both the criminal standard and the civil standard. And that's in our briefs. You know, we go through the Matthews factors. We go through the Barker factors. But have the Federal courts. I'm sorry. Have the Federal courts. No, because this is – this does seem to me to be the first case of this type arising out of California that's in the Federal courts. I haven't been able to find another one involving the SVP process. But Your Honor certainly have all the authority that you need from the California courts, which, again, decided these questions under Federal law. Thank you very much. Thank you, Your Honor. I'm sure he's signed to the appellate. On this case – Could you get close to a microphone so we can hear you?  You have to keep your voice down. Talk loud because it's hard for me to hear. Right. Right. Thank you. Well, this case, as this Court has rightly pointed out, it is a civil case because Counsel, I have a different problem for you. Right. The only question certified is the Younger abstention issue. And it's hard for me to see that a case where nobody does anything for nine years is ongoing. Regardless of whose fault it is, regardless of whether this fellow Knight is just playing games with the Court, which he may be, we're supposed to look at whether it's ongoing in the sense of anything happening and nothing is happening. Right now they're waiting for us, but they've been waiting until Knight felt like going to trial as far as I can see. Even though he's not entitled to control that. Also, right now the case is on hold in the State courts until the Federal courts rule, which means far from us interrupting them, they've interrupted themselves to wait for us. And third, there's an exception in Younger for speedy trial cases involving extraordinary circumstances where irreparable injury can be shown. I don't know that this falls within that because it's not a speedy trial case, technically. It's not a Sixth Amendment case since it's not criminal. But it is pretty extraordinary. And the irreparable injury, it might be to Knight's freedom or it might be to getting a decision made that he's a sexually violent predator and needs to be held and getting the decision made while the psychiatrists are still alive to testify about him. And fourth, a Younger abstention question is whether ordering trial would have the practical effect that it would enjoin or have the practical effect of enjoining ongoing State proceedings. And it seems plain that it wouldn't. So it's looking to me like on the narrow Younger abstention ground, there just isn't any reason to apply the doctrine and there's reason to apply the exceptions. What am I missing? Well, I'll just go back from your last question. I don't have a problem with this Court going back and saying, go to trial immediately, because I think that's what we really want to have happen. So you're really happy with us saying Younger abstention doesn't apply and saying try the case? Yeah, because actually, I'm not happy with saying Younger abstention doesn't apply, because that could be a bad precedent, because in your case. Well, we can't tell them to try the case. We can't tell them to do anything unless we say we're not abstaining. Right, right. But to go back and say that, you know, this Court should not interfere, you know, under Younger abstention, is, you know, because they're saying there's no case ongoing. But you can't say that the case is not ongoing just because the defendant or, in this case, I guess the Petitioner, keeps asking for the continuous set of cases. Let me give you a hypothetical. It's not this case, but suppose that the California Superior Court issued an order. This case is continued. There shall be no further proceedings in it for the next 10 years. Would that be an ongoing case? That cannot. But that is nothing like this. I mean, even though we're talking about the general case, but I think that the general case is that if the person who is making the complaint, after all, this is a court of equity, the person making the complaint has to come with clean hands. And if the person saying, I haven't been brought to trial, has been primarily responsible for not letting the thing go to trial, either through shenanigans, you know, manipulation of the various courts. Clean hands is the equity language. I'm sorry. I'm sorry. What did you say? Clean hands is equity language. I'm trying to understand the theory here. Yes. Well, because this is, you know, the court here, if it were to intervene with the habeas corpus, that would be a kind of equitable remedy. Did I understand you to say a moment ago that you don't object to our issuing an order that says try this guy or let him out? Did I hear you right? Yes, you did. And let me just qualify that. Because if you say try this guy or let him out, now, what does that have to do with how does that work if his lawyer or he keeps objecting again? The problem is that the objection overruled. We're trying the case on Thursday. If you want to continue, it's denied. You know, that's what happens. Is there some law in California that none of us are California lawyers, I guess. In Alaska, a lot of judges used to deny continuances routinely. Trial dates just didn't move. Is there some rule in California that if a lawyer asks for a continuance, he's entitled to it? No. No, there isn't. It isn't just entitlement. It's really good cause. So if the judge Is there a practice? Do the judges always grant them until everybody feels like going to trial, or? No. No. It's always supposed to be good cause. But the problem is that in a criminal case Is it for real? Do they force cases to trial when the parties say no? Yes. They do force cases to trial sometimes. But it's a two-edged sword. Because if you force a case to trial when the lawyer says, I'm not ready because I have to do all these things yet and they haven't been done, and you force the case to trial, then you're looking at built-in reversal grounds. They reverse automatically? No, but they could say, well, he didn't get his fair trial because his lawyer wasn't ready. I just don't understand any problem. And I think I hear you saying you don't have a problem for us to say try him in 60 days or dismiss the case. I don't have any problem with it in this particular case, but I have a problem with it in the, you know, as precedent. Is 60 days okay? I mean, it's this case that's in front of us. And after all this delay, I wouldn't be surprised if a psychiatrist necessary to the case is retired to Samoa, something like that. Do you know? Oh, that doesn't matter. Is 60 days okay? 60 days may be too short a time because what happens is that the reason that these cases can get continued for such a long time is because it's not like a criminal case. The facts are constantly changing. The psychiatrists do re-evaluations. I used to do these commitment hearings in Arizona, and I honestly don't understand why you can't have tomorrow some psychiatrist go see this guy and render an opinion by the end of the week. You know, I mean, I don't understand what the problem would be. They can have a new psychiatrist see the guy and render an opinion, but sometimes they, you know, the psychiatrists have a lot of other cases also. I know, but they have to put this, that means they have to put this one on the front burner, which given the circumstances wouldn't hurt my feelings at all. You know, I mean, they have to neglect something else to pay attention to this one after nine years. That's the way it works. There are many SVP cases now. Are those hearings held by a regular superior court judge? Oh, the civil commitment hearings, is that just a regular calendar case on the superior court? No, they have a special. If we said 90 days, would they be able to get all their witnesses and everything ready and schedule it within that time? I would think 90 days they could. And I think that the, because they may have to do new, new evaluations, and that is why they don't do it. Usually if they're in a, like if they're in Patton or Cascadero or something, there are doctors there all the time. That's right. And they have a regular running file on these guys, so they can pull the file up and look at it and see what he did yesterday. Yeah, they probably could. And I, you know, I think that this may be what it takes to get this case to trial. Because we, the, I'm saying the prosecution or the, you know, DAs have constantly said we're ready, we're ready. We have had the evaluations. But the, the pro, the. I can see what, what is happening here from a judge's standpoint. The judge is thinking, well, what's important is to keep him incarcerated so he doesn't mess with children if the government is right. And if he just assumed delay the proceeding that might let him out, fine. He stays in. So I can see why, from the point of view of a judge, thinking in terms of protection of the public, he might have been granted a whole lot of continuances that would not be granted in a personal injury case. Right. But, so all we need to do really is say no more younger abstention, 90 days, release out, and it's really not a problem for him to get the case done. Is that right? For this case, I think it is right. But I'm, I'm really afraid that. There are a whole lot of cases that have been sitting for nine years? There have been a number of cases that have been sitting for maybe not nine. Oh, wow. So this is. So if we do do that, it may really require California to get on the stick. But also it may then overload the court because the court has, you know, we have only a certain number of specialized courts that only do these types of cases. And then we have only so many psychiatrists and so many. So it would be a better thing for them to, for this court to say, yes, it is a long time, but, you know, but, but we shouldn't get in, you know, get into this because. Well, this really has become a California practice. It has become a California problem. It is a practice because the defendants, I mean, the, the petitioners or the, what, what would they be called? The SVP commitment, what? First the. The dude. Sorry? The dude. Yeah, the dude, right. They, they are the ones asking for the continuances. And, and they have this because they don't, it's the same to them if they have the, they're, they're in a hospital. They're not really incarcerated. So they're not really among the prison inmates who may be very bad to them. So they, they don't really, they, and then they, they don't really have the case getting worse because. So it's a matter of just staying in there. Yes. Or living under a bridge somewhere that's more than a mile from any school or anything else. Right, right. So what was his underlying convictions? Yes, I have to address that briefly. They were not for, there, there was not a child molestation conviction. It was all rapes of adult women. You know, he took umbrage at you referring to him as a child molester. Sorry? He took umbrage at the reference. That's right. That's right. And I apologize to this Court and, you know, to him. That was a mistake. He just rapes adults? Yes. He just rapes adults. He, he rapes, I, I think he raped about maybe ten or so women. But the, but he was only convicted of six, I think. But one of the. He's still likely to lose on a sexually violent predator. Right. If he rapes that many women when he's out. Right, right. But, but the thing that I made the mistake of being, you know, characterizing as a child molestation was the 288AC. I looked in the penal code from 1982 and 1983, and that's what it said. But because I don't, I didn't try the case and I don't have the underlying records, so I just alleged what I saw in the records. But, you know, and this was done already in the district court, but he took no, you know, he didn't object to it then. So I assumed it was. Doesn't really matter, does it? I mean, it's sexually violent predation whether you rape adults or children. That's true. Yes, yes. But I think he took umbrage because. Well, child molesters are. Sort of one step. Disfavored in the penal system, aren't they? Right, even. I mean, it's no great honor to be a rapist, but in the hierarchy, child molesting is even lower, right? That's right. That's right. So, so anyway, going back to what I was saying is that this is not a case that gets worse over time for the defendant, for the, you know, committee, potential committee, because every so often he could get re-evaluated. And when he gets re-evaluated, perhaps he learns how. Well, it's not great. I mean, if he had a real chance to get out, it's nice to be able to go down to 7-11, get a six-pack, come back, sit in your recliner, watch a game, smoke a cigar. That's true. Can't do any of that. That's true. But on the other hand, if he has to go to trial in order to do that, then he doesn't want to go to trial because it doesn't look good for him, as Your Honor said. And so, you know, if he doesn't have to go to trial, then he doesn't get the final determination that he is an SVP, in which case then things have to really change before he can get, you know, looked at again. So he doesn't have an incentive to go to trial. And that's what I'm trying to get at, is that it should not be counted as if, you know, we really just held him without trial for all this time. It is that his and his representatives have constantly asked for these continuances. And the other point also ---- Now I'm getting it. You really would just assume he went to trial and got it over with, too, but you're worried this could turn out like that California prison reform case where the whole system is turned upside down. Right. Yes. Because there are so many of them. Right. And I think that the way that he has now gone in and said, let's stay in this case because let's wait for the Ninth Circuit to decide, well, there are two things that they can do. But that's what you say today. Your colleague back in Superior Court is only too happy to let it roll over. Well, you know, perhaps, but I kind of ---- Perhaps. I mean, that's exactly what happened. I mean ---- Well, yes, that's what it looks like. But we have had the evaluation. So whether they go to court in order to put the people on, you know, the psychiatrist on the stand and say, okay, so what did you find out, and, you know, put all this evidence on, or whether they just go in and say, okay, well, let's put it over, I don't think it's a whole lot different for the, you know, I mean ---- Well, if they make a finding that he's a mentally disordered MDSO or whatever they make a finding, then that he'll be committed probably indefinitely. Right. Right. And so for that reason, I think that the people, you know, all things being equal, would rather try him than not. Did anything happen as a result of the appointment of the Northern District judge in San Francisco?  What they dealt with was the psychotic offenders that were being mistreated or allegedly mistreated in the system, or not being given adequate medication or treatment. Is that still an ongoing project? I notice that the governor's become quite active in clearing out some of the problems, and trying to open up some space in the system. Yes. Well, I think ---- Now, is this a part of a space shortage problem, or ---- I don't know if it's a space shortage problem because it's a different system. You know, one is the state hospital, and, of course, they have people that have to, you know, keep the security, and they have people that have to treat them and all that. But I think it's a somewhat different system. But I imagine that the space shortage would be maybe less of a problem in this case because they have to treat them. There must be some kind of a delay problem. We have two scandalous bureaucracies in this country. One is the Veterans Administration, where veterans die of old age before they ever get to see a doctor. And there's this sort of thing going on in the MDSOs, mentally disordered, I don't know whether defendants or subjects. But they're in limbo. They're neither declared mentally disordered and committed, or they're just held while they're being studied. I think there was some objection to just holding them. And I think that now the practice is to try to stop treating them even while they're being held. And I think that's why you have that hearing, preliminary hearing or the proper cause hearing, where they find, yes, they fit under these categories for, you know, eligible for SVP commitment, and then they send them to the hospital. So I think in the hospitals they are getting some kind of treatment, although I don't know, you know, that it would be very different if they are finally committed, whether the kind of treatment they're getting is going to be substantially different or not. It probably isn't. But their status would be different, because then they wouldn't be always coming back to court with the possibility of not getting committed, whereas now, after a trial, they will be committed, and then they're just going to get treatment. Thank you very much. Mr. Larson. Thank you. Thank you, Your Honor. I'd like to speak to the remedy here. There's no authority for the proposition that once the clock runs out, the State then gets a second chance to try somebody when his due process rights have been violated. The California authorities that have addressed this question are uniform in the relief, and the relief there is dismissal of the position where the delays were much, much shorter than usual. That's State law, right? Well, we're not allowed to apply to order people released on a petition for habeas corpus except under Federal law. Now, if State law says he's entitled to be let go, then the State court can do it under State habeas. All those State cases are applying to Federal law, Your Honor. Of course, you're not bound by the State decisions, but they are the only authorities that have addressed this question, because this is the first Federal case that has addressed it in the context of the SVP petition. Now, of course, you're not bound by it, but all of the State courses have – all of the State court decisions have applied to Federal law for much shorter delays, 11 months, 17 months, 3 years. Here, it's 9 years, Your Honor. And I just want to address, you know, the State's position is that, well, of course he's guilty. I know – Well, right now, even if it's a criminal case, applying the speedy trial right under the Sixth Amendment where the speedy trial rule does not apply, the Federal courts don't hold that a person's entitled to be let go after 6 months or 11 months. So you're saying that we would have to apply Federal law as interpreted by the State courts differently from the way the Federal courts interpret it. Well, the remedy here is – your discretion is very broad as to remedy under the habeas statutes, right? You have to fashion relief as justice requires. Now, here, in the only cases where this question has come up, the relief has uniformly been dismissal petition. They've applied both the criminal analysis under Barker and the civil analysis under Matthews. And they say when the clock runs out, the State does not then get to try the person. There's no clock. I'm sorry? There's no clock. The clock here, it's a matter of being brought to trial within a meaningful time. That's the due process clock. Just as under the speedy trial clock, it's a speedy trial. Sure, it's not a bright line, right? It is a fact-specific amorphous conduct. Are these cases you're referring to, do they involve a defendant or an individual who either personally or through his lawyer has routinely requested or stipulated to continuances? Stipulated to continuances. There were continuances in all these cases. It's harder to tell because the timelines were much more truncated than they were here. But in one case, for example – I'm just wondering how similar these cases are. Right. Well, in Shelton, for example, which is in the briefs, there, the overall delay was 17 months. Civil or criminal case? I'm sorry? Civil case or criminal case. No. All of these California cases dealt with the civil commitment petitions that are at issue here. So in Shelton, the overall delay between the petition being filed and the trial was 17 months. The defendant there did not assert his right to a speedy trial until 13 months in. And yet the Court said there's been a due process violation here. It's been too long. You need to be released, and the State does not get a second chance to try you because ultimately the responsibility for trying people in our country falls on the government, not on the individual. Thank you very much, Mr. Argy. Thank you, Your Honor. Mr. Son, thank you. The case just argued is submitted and will stand in recess. Thank you.
judges: Goodwin, Kleinfeld, Silverman